IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:24-CR-76 |
| | ) | |
| JUSTIN WHICHARD, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Erik S. Siebert, U.S. Attorney for the Eastern District of Virginia, and Clayton D. LaForge, Assistant U.S. Attorney, respectfully submits that Justin Whichard should be sentenced to a sentence of 360 months' imprisonment.

**I.  Summary Background**

Whichard sextorted and attempted to sextort minor victims, leading to the production of child sexual abuse material in violation of 18 U.S.C. § 2251(a). He posed as a child to meet children on the Internet, engendered a romantic and sexual dynamic, and used a detailed script he kept in the "Notes" section of his iPhone to instruct them to produce grotesque sexual abuse material under pain of blackmail for failure to comply. He then used the coerced imagery to extort an adult male by pretending to be a minor victim in the imagery. He fled the jurisdiction for approximately six months, evading state and federal law enforcement's efforts to apprehend him.

**II.  Standards Governing Sentencing**

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting

1

*Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id.* (citing *Gall*, 552 U.S. at 50); see also *Nelson v. United States*, 555 U.S. 350, 351-52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

**III.     Motion to Grant the Defendant One-Level Decrease for Acceptance of Responsibility**

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. U.S.S.G. § 3E1.1(b). The PSR has properly applied a two-level decrease in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater. Accordingly, the government moves this Court to apply an additional one-level reduction for

acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). This reduction is already reflected in the PSR's offense level calculation.

## IV.   The Statutory Sentencing Factors

### A.   <u>The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))</u>

Whichard's words in his sextortion script demonstrate the harm, seriousness, and depravity of his offense:

> REQUESTS:
>
> A one minute clip playing taking your titties out and playing with them while telling me how you want me to cum all over you. Say me name too (Justin)
> A two minute, pussy play video with you telling me how bad you want to cum and saying my name (Justin) start off slow and get rougher towards the end
>
> Exactly how I want it okay? Full one minute video of you using your hairbrush on your pussy. Flash on and set your phone down so you can get a good angle. The last one you did in the bathroom and rushed. Fuck yourself rough and fast. And then end playing with your titties telling me to cum all over you.
>
> & show face a lil bit in them because its not like you didn't already in what I've saved. I like to see who I'm cumming to I know I'm sick.
>
> Firest, from now on don't screenshot chat, delete, or block me. Read carefully, im not a sugar daddy, im a 19 y/o from Canada. My names not Brandon, and that $4 took so long because it's a burner cashapp. Meaning I'm not able to be prosecuted for any crime I commit. I scan and collect nudes from pretty girls for my own personal pleasure. If you want all of this too stay between us you'll follow my few simple requests and we can both forget this ever happened if not, then you can probable guess what will happen. Let me know if you want to play hard or if you want to hear my requests out and follow them. I have no gain in exposing you but it doesn't hurt me at all and the boys in my channel love it.
>
> I only expose the ones who don't give me what I ask. If you follow what I say you will avoid complete embarrassment. I run a Telegram channel with over 6,000 members and can send a message

> out with these pictures and a couple TikTok's I've saved, and all your social links. They would share your content, harass you, and find people you know. You follow through with my requests, and I and this whole situation disappear forever! I've already recorded your following and followers on tiktok as well as your Facebook friends. Got your snap, fb, and tiktok links loo. I do this all the time.

PSR ¶ 9(7).

Whichard put this script to effect, chatting online with and demanding the three specific videos from MV1, a 14-year old girl. *Id.* ¶ 9(1), (8). He started with trying to garner trust by posing as someone willing to pay for sexual abuse imagery. His own statement provides insight:

> alright love. First off I have cashapp venmo apple pay and paypal. We can start at let's say $60 for 10 pictures and if I like quality and effort out into them we'll do $120 for 10 videos etc. && also through chat not snaps. i want to be able to save the content I buy once you become my baby you'll be paid for content but also a weekly allowance separate rom the content payments. I start most girls off at $100 a week but depending on how well you care for me and our loyalty you may get more. also ill be straight forward, i do this pretty often considering im a single dad with extra cash so it's embarrassing to say but I've been finessed a couple of times by girls who say they're up for it and then block me on everything. long story short, before anything if you can just send 15-20 teases/nudes so I can decide how high I wanna go for your first payment & so that I know that I can trust you. For everything else I'll always send payment first! if you're interested in my offer than we'll move forward, if not that's fine too and have a goodnight

*Id.* ¶ 14. He ultimately threatened to ruin and embarrass her. *Id.* ¶ 9(8).

Whichard's attempt to sextort MV1 failed, but he accomplished his objective with MV2, a girl between 12 and 13 years of age. *Id.* ¶¶ 9(1), (9); 15. He threatened to publicly disseminate the imagery of MV2, which scared and intimidated her into complying with his demands to live out the script. *Id.* ¶ 9(9). She sent him the imagery consistent with the demands in the script. *Id.*

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Whichard's conduct was not isolated. He masturbated over the head of MV3 and sent

4

himself nude photographs of MV3. PSR ¶ 9(11)-(12). Whichard rubbed his erect penis on the exposed feet of MV3 and then ejaculated on the sheets near her feet. *Id.* ¶ 16. Whichard had routine access to MV3. *Id.* ¶ 9(11). Whichard possessed 131 unique images and 15 unique videos of child sexual abuse material, including a 57-minute video, as well as exploitation material depicting infants and toddlers. *Id.* ¶¶ 9(6), 17, 26. Law enforcement spent nearly six months searching for Whichard, finally tracking him down in Tennessee after leading law enforcement across various state lines. *Id.* ¶ 18.

Although Whichard was candid with law enforcement once he was caught and the number of victims he identified aligns with the investigation, it was only after a protracted search following ordering a glock conversion device from China, which is one way through which he came to the attention of law enforcement. *Id.* ¶¶ 9(3), 13.

Whichard reported an extremely difficult upbringing regarding both parental involvement and substance abuse. *Id.* ¶¶ 78-89, 94-95, 98. He was unjustly exposed to hardships as a youth. *Id.* Assuming that his description is genuine, there can be no doubt that his early years evoke significant sympathy. *Id.* However, his demonstrated intelligence, savviness, and dexterity with technology bear on assessing these hardships. His scheme shows an intricate ability to amass a multi-step, manipulative method of obtaining financial gain through technological guile. Put differently, his extortion methods were cunning, elaborate, and reflective of a person capable of employing technology.

C. <u>The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A)); and to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))</u>

Sextortion is a horrendous crime perpetrated on one of the most vulnerable classes of the citizenry. The Federal Bureau of Investigation has provided a succinct description that aligns with

the facts of this matter.  *See* Federal Bureau of Investigation, "How We can Help You – Sextortion" (last accessed Sept. 18, 2025), *available at* https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/sextortion.

The elaborate nature of the "Notes" script to facilitate trust and engender a comfortable rapport with children, only to embarrass, humiliate, and intimate them, requires no elaboration. In *United States v. Martin*, the Sixth Circuit affirmed a 29-year sentence in a sextortion case in which it balanced similar facts.

> Without question, there was meaningful evidence in the record of Martin's youth, serious mental-health and substance-abuse diagnoses, and his potential for rehabilitation. But there was also significant evidence bearing on the severity of Martin's crimes. The record indicated that Martin had 'sextorted' a teenage girl for two years, forcing her to send him money and humiliating photos, under threat of exposure and physical harm.
>
> ….
>
> Further undisputed evidence submitted at the sentencing hearing indicated that this girl was just one of Martin's victims. From May to December 2021, Martin 'threatened to rape no less than 13 individuals.' And a search of his phone revealed 112 images, including of other unknown potential victims, and screenshots documenting 'sextortion or sextortion attempts of approximately 25 different females.'

2025 U.S. App. LEXIS 16520, *9-10 (6th Cir. July 3, 2025).  Whichard and *Martin* bear several similarities, including the general scheme, volume of imagery, and interplay between the seriousness of the offense and the defendants' mental-health issues.  *Id.*  Although the number of victims in *Martin* was significantly higher, Whichard's conduct includes not only sextortion but also engaging in sexual acts around and sexual contact with MV3, as well as sending himself nude imagery of MV3, to whom he had access.  Whichard's flight from law enforcement underscores his lack of respect for the law.  PSR ¶ 18.

In another matter, a sextortion defendant was sentenced to 60 years' imprisonment for threatening to take over the accounts of similarly aged girls whom he would sextort, engaging with

6

numerous victims. *See generally* Press Release, "Orange City Man Who 'Sextorted' Multiple Minors Sentenced to 60 Years" (Aug. 6, 2020), *available at* https://www.justice.gov/usao-mdfl/pr/orange-city-man-who-sextorted-multiple-minors-sentenced-60-years. The conduct and concomitant sentence embody the seriousness of the offense. And instead of threatening to physically harm his victims, *id.*, Whichard actually carried out harm against MV3 involving a sexual act—albeit unrelated to sextortion.

The Seventh Circuit affirmed on other grounds a district court's imposition of a 75-year sentence for a yearslong sextortion scheme involving hundreds of victims. *United States v. Hernandez*, 44 F.4th 1053, 1055 (7th Cir. 2022). While the United States is not requesting 75 years' imprisonment, this sentence demonstrates the gravity of sextortion schemes and how courts around the country assess the seriousness of the offense. Additionally, in *United States v. Cox*, the defendant was sentenced to 420 months' imprisonment for sexual exploitation of children and threats to damage reputation. 2025 U.S. Dist. LEXIS 110706, *5-6 (N.D. Ind. June 11, 2025) (addressing a Section 2255 challenge and describing the offenses); *see* Case No. 1:18-cr-83 (listing sentences for various charges involving a sextortion scheme). The district court described the offenses as involving coercing children into sending them self-made child sexual abuse imagery under threat of publication of other child sexual abuse material in imposing this significant sentence. *Id.*; *cf. United States v. Ackell*, 15-cr-123, ECF No. 117 (D.N.H. July 18, 2017) (sentencing defendant to 33-months' imprisonment in a sextortion case, distinguishable because the defendant did not have an elaborate scheme to extort multiple individuals or physically involve a minor victim, as here). Courts from around the nation treat sextortion schemes with extreme seriousness when imposing sentences.

   D.   <u>The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))</u>

7

The defendant has acknowledged that correctional treatment would be beneficial and the government agrees. Based on the PSR, it appears that substance-abuse treatment may be in the defendant's best interest.

E. <u>The Kinds of Sentences Available, the Sentencing Guidelines, Policy Statements, and the Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(3)-(6))</u>

. The maximum term of imprisonment of 30 years aligns with the low-end of the accurately calculated Guidelines. The Guidelines reflect the policy positions of the Sentencing Commission and the statutory maximum embodies the intention of Congress. The cases outlined above reflect sentences imposed for sextortion schemes, demonstrating that a significant sentence is both appropriate and consistent.

F. <u>The Need to Provide Restitution to Victims of the Offense (18 U.S.C. § 3553(a)(7))</u>

The parties do not dispute that restitution is mandatory. Several victims have come forward to request restitution. Through counsel, Whichard has resolved them.

**V.    Supervised Release Conditions**

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government respectfully requests that the Court orally pronounce all conditions of supervised release. In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions.

In addition to the mandatory and standard conditions of supervised release imposed for felony convictions, the government requests that the Court impose the special supervised release conditions that the U.S. Probation Office recommends.

## VI. Conclusion

For the reasons stated above, the government respectfully submits that an above-Guidelines sentence of 360 months' imprisonment is sufficient, but not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted:

        Erik S. Siebert
        United States Attorney
        Eastern District of Virginia

By:       /s/
        Clayton D. LaForge
        Assistant United States Attorneys
        101 West Main Street, Suite 8000
        Norfolk, Virginia 23510
        Tel. - 757-441-3031
        E-mail Address –
        Elizabeth.yusi@usdoj.gov
        clayton.laforge@usdoj.gov

**CERTIFICATE OF SERVICE**

      I further certify that on September 18, 2025, I will send an electronic copy of the foregoing to the following:

Kalyn Monreal, United States Probation Officer

                                                    /s/
                                      Clayton D. LaForge
                                      Assistant United States Attorney